IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CHRISTINE JENSEN, | ) | Civil No.: 6:14-cv-00208-JE |
| | ) | |
| Plaintiff, | ) | OPINION AND |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| CAROLYN A. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Kathryn Tassinari
Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

     Attorneys for Plaintiff


Billy J. Williams, Acting U.S. Attorney
Janice Hebert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204


OPINION AND ORDER – 1

Jon C. LaMont
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5ᵗʰ Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

      Attorneys for Defendants


JELDERKS, Magistrate Judge:

Plaintiff Christine Jensen brings this action pursuant to 42 U.S.C. §405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the Commissioner)

denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI) under the Social Security Act (the Act).  Plaintiff seeks an Order remanding this

action to the Social Security Administration (the Agency) for an award of benefits. In the

alternative, she seeks an Order remanding the action for further proceedings.

For the reasons set out below, the Commissioner's decision is affirmed.

## Procedural Background

Plaintiff filed applications for DIB and SSI on February 7, 2011, alleging that she had

been disabled since February 1, 2009.  After her claims were denied initially and upon

reconsideration, Plaintiff timely requested an administrative hearing.

On October 2, 2012, a videoconference hearing was held before Administrative Law

Judge (ALJ) Mary Kay Rauenzahn.  At the hearing, Plaintiff amended her alleged onset date to

January 1, 2011.  Plaintiff and Jeffrey Tittelfitz, a Vocational Expert (VE) testified at the

hearing.

In a decision dated October 25, 2012, the ALJ found that Plaintiff was not disabled

within the meaning of the Act. That decision became the final decision of the Commissioner on

OPINION AND ORDER – 2

December 12, 2013, when the Appeals Council denied Plaintiff's request for review. In the

present action, Plaintiff seeks review of that decision.

## Background

Plaintiff was born in 1965 and was 46 years old at the time of the ALJ's decision denying

her applications for benefits. She attended school through the 8th grade and has past relevant

work as a housekeeper, caregiver/home attendant, and telemarketer.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary

of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe

impairments. A claimant who does not have such an impairment is not disabled. If the claimant

has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step

Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment

is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.

20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform

relevant work he or she has done in the past.  A claimant who can perform past relevant work is

not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the

Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R.

§ 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other

work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that

the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE) or by reference to the Medical-

Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner

demonstrates that a significant number of jobs exist in the national economy that the claimant

can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant

is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at

1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy.  Id.

## ALJ's Decision

As an initial matter, the ALJ found that Plaintiff had last met the requirements for insured

status on June 30, 2012.

OPINION AND ORDER – 4

At the first step of her disability analysis, she found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on February 1, 2009.[1]

At the second step, the ALJ found that Plaintiff had the following "severe" impairments: asthma/chronic obstructive pulmonary disease (COPD), degenerative disc disease of the cervical spine, fibromyalgia, hypertension, obesity, and high cholesterol.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings. 20 C.F.R. Part 404, Subpart P., App. 1. (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ next found that Plaintiff had the residual functional capacity (RFC) required to perform light work except that she was limited to six hours of sitting and 2 hours of standing/ walking in an 8-hour work day; could occasionally climb stairs and ramps but must avoid climbing ladders, ropes, or scaffolds; could frequently stoop, kneel, crouch and crawl; was limited to occasional bilateral overhead reaching and all work should be performed in front of the body at bench/desk level.  In making her determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible to the extent they were inconsistent with this RFC assessment.

Based upon the testimony of the VE, at the fourth step of her disability assessment, the ALJ found that Plaintiff could perform her past relevant work as a telemarketer.  Based on that conclusion, she found that Plaintiff was not disabled within the meaning of the Act.

---

[1] Although at her administrative hearing Plaintiff amended her alleged onset date to January 1, 2011, the ALJ's decision refers to the original alleged onset date. Neither party takes issue with this discrepancy. For purposes of its review, the Court, like the parties, relies on the amended alleged onset date.

OPINION AND ORDER – 5

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for finding that she was not wholly credible; erred in failing to credit the full opinion of her treating physician, Dr. Rio Lion; and erred in finding that Plaintiff was able to perform her past relevant work as a telemarketer.

OPINION AND ORDER – 6

## I. Plaintiff's Credibility

Plaintiff testified at the hearing before the ALJ that she was working five hours a day, three days a week as a caregiver and could not work more hours because of back pain and her tendency to drop things.  She testified that she could not work as a telemarketer because it caused her lower back to hurt, caused numbness and tingling in her right shoulder and typing caused pain.

Plaintiff testified that she had pain in her neck and lower back that at times precludes her from moving or walking. She could walk only a block or two before needing to sit down and rest, could stand about fifteen minutes before needing to rest and could sit for about fifteen minutes before needing to get up and move around. She walked as much as possible to "walk off the pain." Her arms locked up, causing her to drop things and although she could pick up small items such as buttons and coins, she could not hold on to them. In her disability report, Plaintiff indicated that she is in pain "24/7." She took Lyrica, which controled the fibromyalgia pain but not pain stemming from her spinal stenosis. She also took Naproxen and Flexeril but did not take pain pills because she thought them addictive. Her medications caused her to be "fuzzy headed."

As noted above, in evaluating Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible.

## A.  Applicable Standards

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews, 53 F.3d at 1039. If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's statements concerning the severity of her symptoms merely because they are unsupported by objective

medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir.1998) (<u>citing</u> <u>Bunnell v.</u>

<u>Sullivan</u>, 947 F.2d 341, 343 (9th Cir.1990)(<u>en banc</u>)). If a claimant produces medical evidence of

an underlying impairment and there is no evidence of malingering, the ALJ must provide

specific, clear and convincing reasons, supported by substantial evidence, to support a

determination that the claimant was not wholly credible. <u>Thomas v. Barnhart</u>, 278 F.3d 947,

958–59 (9th Cir.2002); SSR 96–7p. If it is supported by substantial evidence, the ALJ's

credibility determination must be upheld, even if some of the reasons cited by the ALJ are not

correct. <u>Carmickle v. Commissioner of Social Security</u>, 533 F.3d 1155, 1162 (9th Cir.2008).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but

instead must identify the testimony that is not credible and the evidence that undermines the

claimant's complaints. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir.1993). In addition, SSR 96–7

requires an ALJ to consider the entire record and to consider several factors, including the

claimant's daily activities, medications taken and their effectiveness, treatment other than

medication, measures other than treatment used to relieve pain or other symptoms, and "any

other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms." An ALJ may support a determination that the claimant was not entirely

credible by identifying inconsistencies or contradictions between the claimant's complaints and

her activities of daily living. <u>Thomas</u>, 278 F.3d at 958–59 (9th Cir.2002).

## B. Analysis

Plaintiff here produced medical evidence of underlying impairments that could

reasonably be expected to produce some of the symptoms she alleged, and there was no evidence

of malingering. The ALJ was therefore required to provide clear and convincing reasons for

concluding that she was not wholly credible.

OPINION AND ORDER – 8

In support of her credibility determination, the ALJ noted that Plaintiff earned over $10,000 in 2010 working as a caregiver. Plaintiff correctly notes that the earnings cited by the ALJ predate the amended alleged onset date of January 1, 2011.  However, the ALJ also observed that Plaintiff "currently performs this same work on a part-time basis."  At the hearing, the VE testified that the home attendant position, as it is generally performed, is medium exertion work. The ALJ acknowledged that Plaintiff was only working five hours a day, three days a week; had testified that she had been told by her doctor not to work; and had described her work as not requiring her to stand on her feet for more than an hour during her shifts. However, she also noted that Plaintiff's duties included cleaning, administering medications, doing laundry, cooking and bathing a client; that she worked by herself and could lift a bag of groceries herself.  This supported her credibility finding because the ability to maintain employment "with a fair amount of success" during a period of alleged disability supports the conclusion that a claimant's impairments are less severe than alleged. Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir.1992); see also Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir.2012) (daily activities may be used to discredit a claimant where they are either "transferable to a work setting" or "contradict claims of a totally debilitating impairment").

The ALJ next asserted that Plaintiff's subjective complaints were inconsistent with the objective medical evidence.  The ALJ cited to several records pre-dating Plaintiff's amended alleged onset date in support of her conclusion.  Plaintiff argues that in doing so, the ALJ disregarded the amended date and that "her condition in 2010 is not within the relevant time period."  However, the Court notes that in support of her argument that her allegations were consistent with the objective evidence, Plaintiff herself cites almost exclusively to the pre-January 1, 2011 record as well as to medical evidence that post-dates the ALJ's decision.

In any event, the ALJ also cited to medical record evidence dating from the relevant period that shows Plaintiff exhibited normal muscle tone, normal sensation in all extremities, normal grip strength bilaterally, that her neck appeared supple, lumbar imaging findings were "mild" with fairly well-maintained disc space and no acute lumbar disease, her fibromyalgia was controlled with medication and, in May of 2012, she had reported feeling dehydrated but otherwise "fine."(Tr. 18, 19).  The ALJ acknowledged that although the objective medical findings "reasonably justify at least some exertional restrictions," she concluded that the evidence as a whole was inconsistent with a disabling pain condition.  Inconsistency between a Plaintiff's testimony and the objective medical evidence is a legitimate basis for discounting a claimant's credibility. Carmickle, 533 F.3d at 1161.

The ALJ also noted inconsistencies between Plaintiff's testimony and statements to her medical providers.  She noted that at her hearing, Plaintiff testified that the Lyrica she takes for her fibromyalgia symptoms interferes with her ability to concentrate and makes her "fuzzy-headed." She contrasted this testimony to an absence in medical records of reports of side-effects, Plaintiff's denial to medical providers of any "altered mental status," and her indication to treating provider Dr. Rio Lion that her Lyrica prescription "continues to work well." Plaintiff does not address this basis for discounting her credibility until her Reply. Based upon my review of the record, I conclude that this was an acceptable basis upon which to discount Plaintiff's credibility. SSR 96-7p (consistency of claimant's testimony "both internally and with other information in the case record" is significant indication of a claimant's credibility).

Finally, the ALJ discounted Plaintiff's allegations based on her observations at the administrative hearing.  At the hearing, Plaintiff testified that she could only sit comfortably for about 15 minutes.  The ALJ observed that Plaintiff "appeared to sit comfortably during the 30-

OPINION AND ORDER – 10

minute proceeding without any apparent need to change positions." Tr. 18-19. Both the Social

Security Regulations and Ninth Circuit case law recognize than an ALJ may consider "his or her

own recorded observations of the individual as part of the overall evaluation of the credibility of

the individual's statements." SSR 96-7p; Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)(while

ALJ's observations of claimant's functioning may not form the sole basis for discrediting

claimant's testimony, they may be used in the "overall evaluation of the credibility of the

individual's statements"); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) ("Although

this Court has disapproved of so-called 'sit and squirm' jurisprudence, the inclusion of the ALJ's

personal observations does not render the decision improper."). Because the ALJ's observations

of Plaintiff did not provide the only basis for discrediting her testimony, the ALJ did not err by

including her observations in the credibility analysis. See Verduzco, 188 F.3d at 1090.

Based upon a careful review of the ALJ's decision and the record, I conclude that the

above are clear and convincing reasons which support the ALJ's credibility determination.

However, the ALJ also provided a reason that did not support her credibility analysis. The ALJ

asserted that Plaintiff had received some unemployment benefits during the period under review

and "that receipt of such benefits generally involves acknowledgment that the beneficiary is

willing and able to work." In her response to Plaintiff's opening memorandum, the

Commissioner concedes that the ALJ erred by relying on evidence regarding unemployment

benefits as a factor in making her credibility determination and, under the circumstances, I agree

that Plaintiff's receipt of benefits under Oregon's specific unemployment eligibility rules was not

a clear and convincing reason for discounting Plaintiff's credibility.

Though she cited an inadequate reason for discounting Plaintiff's credibility, the ALJ

cited other clear and convincing reasons for her credibility determination, and her assessment

was supported by substantial evidence. Under these circumstances, the credibility determination should be upheld. See, e.g., Carmickle, 533 F.3d at 1162 (where supported by substantial evidence, ALJ's credibility determination upheld even if some reasons offered are incorrect).

## II. Evaluation of Medical Evidence

Plaintiff contends that the ALJ erred in failing to credit the opinion of her treating physician, Dr. Rio Lion, D.O.

### A.  Applicable Standards

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.2008). An ALJ is not required to find a physician's opinion conclusive as to a claimant's physical condition or as to the ultimate question of disability. Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir.2009). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992).

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761–62 (9th Cir.1989). An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions, Lester v. Chater, 81 F.2d 821, 830–31 (9th Cir.1995), and must provide "specific, legitimate reasons ... based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989) (citations omitted).

OPINION AND ORDER – 12

**B. Analysis**

Dr. Lion began treating Plaintiff in January, 2012. In September, 2012, Dr. Lion completed a Medical Evaluation Report. He indicated that Plaintiff had daily severe neck pain; tingling and numbness in her arms, hands and fingers on both the left and right side; and that she frequently drops items from her right hand. He opined that Plaintiff would have to sit for at least 10 minutes of every hour, that during an 8-hour work day she would be limited to standing and walking for less than two hours and sitting less than 6 hours, that she could lift up to 20 pounds occasionally but not be able to hold that weight for more than 30 seconds, and could use her hands for fine and gross manipulations for less than an hour in an 8-hour work day. He also asserted that Plaintiff would miss more than 2 days of work per month due to her impairments.

The ALJ gave only partial weight to Dr. Lion's assessment on the grounds that it was inconsistent with the doctor's own treatment records and with the assessment of examining neurologist, Dr. Raymond Nolan. The ALJ also discounted Dr. Lion's assessment because of his reliance on Plaintiff's subjective complaints, which, as discussed above, the ALJ had properly discounted. Because Dr. Lion's opinion was contradicted by examining physician Dr. Nolan and State Agency reviewing physicians, the ALJ here was required to provide "specific and legitimate reasons," which were supported by the record for discounting that opinion. See Magallanes, 881 F.2d at 751. The ALJ satisfied that requirement.

The ALJ noted that Dr. Lion's assessment was inconsistent with the assessment provided by examining physician Dr. Nolan. Dr. Nolan performed a consultative neurological examination in June 2011. He reported that Plaintiff exhibited normal muscle tone, normal grip strength bilaterally and normal sensation in all extremities.  He opined that Plaintiff should avoid repetitive bending, twisting and turning of the neck and trunk; should be able to sit for at least six

hours in an 8-hour day and stand and walk for at least 4 hours in an 8 hour day; and was capable

of lifting 10 pounds frequently and 20 pounds occasionally. Plaintiff argues that Dr. Nolan's one-

time examination of Plaintiff should not outweigh the opinion of her treating physician

especially in light of the fact that "he was apparently unaware of MRI findings and the

electrodiagnostic evidence of radiculopathy, as he failed to mention either test in his report." Pl.

Brief at 17. This argument is unavailing.  Nothing in Dr. Nolan's report indicates that he did not

base his assessment on his personal observations during a detailed examination. Nor is the

absence in his report of a reference to an MRI and electrodiagnostic study taken in 2009 a

sufficient basis to set aside the ALJ's otherwise reasonable weighing of the conflicting opinion

evidence. Tommasetti, 533 F.3d at 1041(ALJ responsible for resolving conflicts and ambiguities

in the medical testimony).

The ALJ also cited records indicating that Dr. Lion repeatedly observed that Plaintiff's

neck appeared supple; that Plaintiff reported her medication was "working well," and her

symptoms were under control.  She noted that Dr. Lion reported his assessment was based on a

2009 MRI showing multilevel cervical stenosis but that the medical record reflected that this

condition had not reduced Plaintiff's range of motion or prevented her from working as an in-

home care provider full-time through 2010 and part-time from that time forward. She noted that

Plaintiff appeared to have functioned at these levels without using prescription pain medications.

Records from visits with Dr. Lion in February, March, April, May, June and August of

2012, show no indication that Plaintiff reported or was treated for cervical or lumbar symptoms

or reported issues with handling or fingering.  In September, 2012, Plaintiff visited Dr. Lion to

"help fill out disability paperwork."  In notes from that visit, Dr. Lion remarks that Plaintiff had

had three previous denials of her disability applications.  He reports that she has daily pain in her

OPINION AND ORDER – 14

cervical spine, numbness and tingling in both arms and weakness in her right arm, that "she has learned to live with the pain, she has had no choice," that she cannot do any sort of task, including "fine tasks" for longer than 45 minutes without a break and she must frequently change positions.  It is apparent from this iteration that Dr. Lion did not observe these symptoms himself but, rather, relied on Plaintiff's self-reporting during her September 2012 visit.

These were specific and legitimate reasons supported by substantial evidence in the record for giving less weight to Dr. Lion's opinion. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.2005) (ALJ may reject a medical opinion that is "inadequately supported by clinical findings"); Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir.2004)(medical opinion may be rejected when based upon a claimant's subjective complaints that are properly discredited). Accordingly, the ALJ did not err in her evaluation of Dr. Lion's opinion.

### III. ALJ's Step Four Finding

Finally, Plaintiff asserts that the ALJ's Step Four finding that she could perform her past relevant work as a telemarketer was in error. Plaintiff argues that the ALJ's hypothetical to the VE was flawed because it failed to contain limitations set out by Dr. Lion in his Medical Evaluation report and Plaintiff's testimony regarding her limitations in walking, sitting and holding on to items.  As discussed above, the ALJ properly discounted the opinions of Dr. Lion and Plaintiff's subjective complaints of disabling symptoms.  Accordingly, he was entitled to rely on VE testimony based on a hypothetical that included only those limitations supported by the record. See Osenbrock v. Apfel, 240 F.3d 1157, 1163–65 (9th Cir. 2001)(only limitations supported by substantial evidence must be incorporated into RFC and dispositive hypothetical question posed to VE). The ALJ's finding at Step Four was based on substantial evidence and free from legal error. Accordingly, there was no error.

OPINION AND ORDER – 15

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED and this

action is DISMISSED with prejudice

DATED this 29th day of December, 2015.


　　　/s/ John Jelderks　　　　

John Jelderks

U.S. Magistrate Judge


OPINION AND ORDER – 16